FILED

06/22/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 19, 2020, at Knoxville

**STATE OF TENNESSEE v. JIMMY M. CRUSE**

**Appeal from the Circuit Court for Madison County**
**No. 18-836   Donald H. Allen, Judge**

_____

**No. W2019-01331-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Jimmy M. Cruse, of driving under the influence ("DUI"), third offense.  The trial court imposed a sentence of eleven months and twenty-nine days in the Madison County Jail.  On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction.  Upon our review of the record, we affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender (on appeal) and Bede Anyanwu, Jackson, Tennessee (at trial), for the appellant, Jimmy M. Cruse.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Eric V. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On November 18, 2017, at approximately 11:00 p.m., Deputy Dennis King of the Madison County Sheriff's Office was initiating a traffic stop on Highway 45 in Jackson. Before completing the stop, Deputy King, who was in the left lane, was distracted by the defendant's vehicle as it traveled past him in the right line.  Deputy King observed the defendant's vehicle's brake lights flash two or three times before the vehicle "fishtail[ed]" and "appeared to strike something."  He noticed "a cloud" of "dust or

smoke" appeared and the back of the vehicle "slightly lifted" off the ground when it came to a stop. Deputy King discontinued the initial stop and turned his attention to investigating the defendant's wreck. The defendant exited his vehicle as Deputy King was approaching. When Deputy King asked the defendant if he was injured, the defendant stated he had urinated on himself. Deputy King then noticed the smell of urine and a wet stain on the front of the defendant's pants. When he checked the condition of the vehicle, Deputy King discovered the vehicle had crashed into the guardrail on the shoulder of the highway, which "crushed in the front end of his vehicle."

Deputy King testified he had received training on DUI investigations and had conducted several such investigations as a deputy. While talking to the defendant, he noticed the defendant had "watery" and "reddish" eyes and "was talking about stuff other than what was going on at the time," which indicated the defendant may have been intoxicated. He also detected the smell of alcohol coming from the defendant's vehicle and observed a whiskey bottle inside the vehicle. Because Deputy King's shift was ending, he called the Jackson Police Department ("JPD") and requested an officer to the scene to take over the investigation. JPD Officers arrived approximately ten minutes later.

JPD Officer Steven Overton testified that Deputy King and two other officers were at the scene when he arrived at approximately 11:00 p.m. Deputy King told Officer Overton what he had observed. Officer Overton then spoke to the defendant, who stated he drove his vehicle off the road because he thought Deputy King was pulling him over and became scared. Officer Overton noticed the defendant smelled like urine and alcohol and his pants "were saturated with urine." He also noticed the defendant had slurred speech. Based on these observations, Officer Overton administered field sobriety tests.

Officer Overton conducted the horizontal-gaze nystagmus test and the one-legged stand test. The horizontal-gaze nystagmus test requires the individual to "stand up straight with his feet together and his hands down by his side." The officer then holds a pen in front of the individual's face, and the individual is required "to keep his head straight and follow [the pen]" with his eyes as the officer moves it side to side in front of the individual's face. According to Officer Overton, the defendant failed this test by "turning his head each time the pen moved." Officer Overton next conducted the one-legged stand test. He instructed the defendant to stand on one leg while raising the other leg six inches off the ground, keep his arms straight, and look down at his foot while counting "one thousand one, one thousand two, and so forth" until instructed to stop. According to Officer Overton, the defendant failed this test by putting his foot down several times, and then "[a]t one point [the defendant] even just sat back down on [Deputy] King's car."

- 2 -

Based on the failed field sobriety tests as well as the defendant's "slurred speech, [and] the smell of alcohol on his person," Officer Overton concluded the defendant was under the influence of alcohol and could not safely operate a motor vehicle. Officer Overton arrested the defendant, and a subsequent search of the defendant's vehicle revealed two open alcohol containers in the front center console and one empty alcohol container in the backseat. Officer Overton identified a photograph showing the open containers in the front center console as a "Michelob Ultra which is a beer that was open and also a fifth or pint of bourbon whiskey." He also identified a photograph depicting an empty Michelob Ultra can in the backseat.

Once the defendant was seated in the back of Officer Overton's patrol vehicle, Officer Overton read the implied consent form and asked for consent to conduct a blood test. According to Officer Overton, the defendant would not answer his request and tried persuading Officer Overton to release him "in exchange for giving up names of drug dealers, alleged murderers, etcetera." A dash camera in Officer Overton's patrol vehicle recorded the conversation, and the recording was played aloud for the jury.

The defendant testified on his own behalf. According to the defendant, on November 18, 2017, he saw Deputy King's emergency lights, so he began to stop his vehicle on the shoulder and "[t]he tip of my bumper on that vehicle touched the guardrail going about five to seven miles [per hour] -- I just needed some rear brake pads is all it was. There was no wreck at all." The defendant stated he was scared when Deputy King approached him because "[Deputy King] told me I had a wreck and I know if a black person gets pulled [over] having a wreck they didn't have, they fixing to put something in my car." The defendant denied telling Deputy King that he had urinated in his pants and denied having slurred speech or watery eyes. He also denied being intoxicated. According to the defendant, he agreed to undergo field sobriety testing but told Officer Overton he preferred a breathalyzer test because he "had a pin" in his ankle from a prior surgery. The defendant stated that during the horizontal-gaze nystagmus test, "[Officer Overton] held up the pen for a second and then I did what he said and then he told me to stand on one foot and I said that I've got a pin in my ankle and he said don't worry about it and get on the cuffs."

The defendant denied that his vehicle lifted off the ground or that there was a cloud of dust when he hit the guardrail. To challenge the State's evidence that the defendant wrecked into the guardrail, the defense introduced a video depicting a Kia Sorento, the same make and model of the defendant's vehicle, being used in a "crash test" at five miles per hour, which was played for the jury.

- 3 -

After reviewing all of the evidence, the jury found the defendant guilty of DUI, third offense. The trial court imposed a sentence of eleven months and twenty-nine days in the Madison County Jail. This timely appeal followed.

*Analysis*

On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction for DUI. The defendant generally argues "the jury should have found his testimony to be more credible than that of [Deputy] King and [Officer] Overton, and that the State did not prove beyond a reasonable doubt that he was intoxicated." The State contends the evidence produced at trial was sufficient to support the defendant's conviction, noting questions regarding the credibility of witnesses are determined by the jury and should not be reevaluated on appeal. We agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a

convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant was convicted of DUI. Tennessee Code Annotated section 55-10-401(1) provides:

> It is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, . . . while under the influence of any intoxicant, . . . substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess.

Tenn. Code Ann. § 55-10-401(1). It is undisputed the defendant had been driving an automobile on a public highway in the State of Tennessee.

The State presented evidence that the defendant ran his vehicle off the road and into a guardrail on the shoulder of the highway. Deputy King testified the defendant had slurred speech, watery and "reddish" eyes, smelled of alcohol and urine, and admitted he had urinated in his pants. When questioning the defendant, Deputy King also noticed the defendant "was talking about stuff other than what was going on at the time." Officer Overton testified the defendant smelled of alcohol and urine, and his pants "were

saturated with urine." The defendant also failed both field sobriety tests. When Officer Overton read the defendant the implied consent form requesting a blood test, the defendant refused to answer the request and offered to provide information as a confidential informant in exchange for his release. Finally, Officer Overton located an empty beer can and an open beer can and open bottle of whiskey in the defendant's vehicle.

From these facts, a rational trier of fact could have found the defendant guilty of DUI. The defendant wrecked his vehicle, smelled of alcohol and urine, had open alcohol containers in his car, and showed multiple verbal and physical signs of impairment, including failed field sobriety tests. While the defendant denied wrecking his vehicle, having slurred speech, being intoxicated, or telling the officers he had urinated on himself, the jury, as the trier of fact, is entrusted with determining the weight of the evidence and evaluating the credibility of witnesses, and, based on the verdict, the jury weighed the testimony of the officers and the defendant and reconciled the evidence in favor of the State. *Campbell*, 245 S.W.3d at 335; *Dorantes*, 331 S.W.3d at 379. This Court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. Accordingly, the evidence was sufficient for a jury to convict the defendant of DUI.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE